[Cite as *Campbell v. George J. Igel & Co., Inc.*, 2013-Ohio-3584.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| WILLIAM M. CAMPBELL, | : | |
| Plaintiff-Appellant, | : | |
| | | Case No. 13CA4 |
| vs. | : | |
| | | <u>DECISION AND</u> |
| GEORGE J. IGEL & CO., INC., | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellee. | : | RELEASED 08/14/2013 |

<u>APPEARANCES:</u>

Abigail M. Saving, Lilley & Saving Co., L.P.A., Logan, Ohio, for Plaintiff-Appellant.

Christopher J. Weber, Kegler, Brown, Hill & Ritter, LPA, Columbus, Ohio, for Defendant-Appellee.

Hoover, J.

{¶ 1} Plaintiff-appellant, William M. Campbell ("appellant"), appeals from the judgment of the Hocking County Court of Common Pleas that granted the motion for summary judgment of defendant-appellee, George J. Igel & Co., Inc. ("appellee"), as to the appellant's claim for breach of contract. For the reasons set forth below, we reverse the judgment of the trial court and remand for further proceedings.

{¶ 2} Appellant raises two assignments of error for review.

First Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

Second Assignment of Error:

> THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED
> PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

{¶ 3} The record reveals the following facts and procedural history. Appellant owns real property at 19577 State Route 664, Logan, Ohio (the "Property"). In the summer of 2011, the Ohio Department of Transportation ("ODOT") was preparing a construction project to realign State Route 664 adjacent to Old Man's Cave State Park (the "Project"). On June 20, 2011, a representative of appellee, Jon Pulcheon, met with appellant to inform him that appellee intended to submit a bid on the Project. That same day, appellant and appellee executed a Construction Site Agreement (the "Agreement"). Mr. Pulcheon presented the Agreement, which appears to be a pre-printed form contract with certain additional handwritten terms, to appellant.

{¶ 4} Under the terms of the Agreement, appellant gave appellee "permission to establish a staging area [on the Property] for basing operations associated with the construction project including storage of materials, equipment and other pertinent items of work." The Agreement also gave appellee "the right of ingress and egress to the [P]roperty in locations selected by the [appellee] for all purposes necessary to complete the fulfillment of this agreement."

{¶ 5} In exchange for the permission to use the Property, appellee agreed to "place [an] embankment [of] approx. 120,000 cy [cubic yards]," to "strip and replace topsoil," to "grade and seed all disturbed areas," to "provide positive drainage as needed," and to "place aggregate up to the building site." The Agreement also contains a provision labeled "Lump Sum Payment $50,000.00," requiring appellee to pay appellant Twenty-Five Thousand Dollars ($25,000.00) "at start," and Twenty-Five Thousand Dollars ($25,000.00) "upon completion and acceptance."

{¶ 6} After the parties executed the Agreement, appellee submitted its bid to ODOT and was awarded the Project in July 2011. In January 2012, appellee notified appellant that it would not be using the Property to stage its operations on the Project or to dump fill dirt excavated from the Project site. Appellee then proceeded to dump fill dirt from the Project on property owned by the State of Ohio. The Property was never used, nor was it ever disturbed during appellee's completion of the Project. Appellee never paid the Fifty Thousand Dollars ($50,000.00) to appellant.

{¶ 7} Appellant filed a complaint in the Hocking County Court of Common Pleas against appellee for breach of contract alleging damages of Fifty Thousand Dollars ($50,000.00), plus interest and costs. Appellee filed a motion for judgment on the pleadings. Appellant responded with a memorandum contra and a motion for summary judgment. The trial court converted appellee's motion for judgment on the pleadings to a motion for summary judgment. The trial court ultimately entered judgment on January 4, 2013, overruling appellant's motion for summary judgment and sustaining appellee's motion for summary judgment. The trial court found, inter alia, that a "review of the language of the contract leads to the conclusion that the intent of the parties was that the $50,000.00 was not due until and unless the property was used." Appellant timely appealed the judgment of the trial court.

{¶ 8} Because appellant's two assignments of error are interrelated, we will address them together.

{¶ 9} Both assignments of error challenge the trial court's rulings on the parties' motions for summary judgment. We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12.

Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶ 10} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Id*.

{¶ 11} Furthermore, in order to succeed on a breach of contract claim, the plaintiff must demonstrate that: (1) a contract existed; (2) the plaintiff fulfilled his obligations; (3) the defendant breached his obligations; and (4) damages resulted from this breach. *Chaney v. Ramsey*, 4th Dist. No. 98CA614, 1999 WL 217656, *5 (Apr. 7, 1999), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2nd Dist.1994). " '[B]reach,' as applied to contracts is defined as a failure without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of a party to recognize the existence of the contract or the doing of something inconsistent with its existence." *Natl. City Bank of Cleveland v. Erskine & Sons,*

*Inc.*, 158 Ohio St. 450, 110 N.E.2d 598 (1953), paragraph one of the syllabus. " 'When the facts presented are undisputed, whether they constitute a performance or a breach of a written contract, is a question of law for the court.' " *Koon v. Hoskins*, 4th Dist. No. 95CA497, 1996 WL 30018, *7 (Jan. 24, 1996), fn. 5, quoting *Luntz v. Stern*, 135 Ohio St. 225, 20 N.E.2d 241 (1939), paragraph five of the syllabus.

{¶ 12} Here, both parties agree that the Agreement is clear and unambiguous. It is further undisputed that appellee did not utilize appellant's land in the performance of its Project duties despite appellant having made the Property available for use. Thus, whether appellant may enforce the payment obligation ("Lump Sum Payment" provision) through this breach of contract action rests upon a determination of whether, as a matter of law, the language of the Agreement contained a condition precedent to performance, or alternatively, a mutual exchange of promises.[1]

{¶ 13} If the Agreement contains an exchange of promises, then appellant may pursue a remedy for its breach. Where, however, the formation of a contract is dependent upon a condition precedent, such condition must be performed before the agreement becomes effective. "A condition precedent is an occurrence that must take place before a contractual obligation becomes effective." *Karr v. JLH of Athens, Inc.*, 4th Dist. No. 01CA16, 2001 WL 688543, *13 (June 12, 2001). Thus, "[i]f a condition precedent is not met, a party is excused from performing the duty promised under the contract." *Id.* "The determination of whether a contractual provision 'is a condition precedent or merely a promise to perform is a question of the parties'

---

[1] The interpretation of a written contract is a matter of law. *Karr v. JLH of Athens, Inc.*, 4th Dist. No. 01CA16, 2001 WL 688543, *13 (June 12, 2001), fn. 30. In construing a written contract, the primary objective is to ascertain the intent of the parties. *Hoskins*, 1996 WL 30018 at *5. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Id.*

intent.'  Intent is best determined 'by considering the language of a particular provision, the language of an entire agreement, or the subject matter of an agreement.' " *Adkins v. Bratcher*, 4th Dist. No. 07CA55, 2009-Ohio-42, ¶ 32, quoting *Hiatt v. Giles*, 2nd Dist. No. 1662, 2005-Ohio-6536, ¶ 23. " 'Condition precedents are not favored by the law, and whenever possible courts will avoid construing provisions to be such unless the intent of the agreement is plainly to the contrary.' " *Id.*

{¶ 14}  Appellee argues that use of appellant's Property is a condition precedent to its obligation to pay under the Agreement.  Appellant, on the other hand, contends that nothing in the Agreement made the payment obligation contingent upon actual use of the Property.  Instead, appellant argues that the Agreement unambiguously imposed a legal duty on appellee to make payment under the Lump Sum Payment provision upon his making of the Property available for appellee's use.

{¶ 15}  The trial court determined that appellee was not required to pay under the Agreement unless or until it actually made use of the Property.  The trial court then concluded that because appellee chose not to use the Property, the Agreement had not been breached.

{¶ 16}  In support of its argument that its obligation to pay under the Agreement was conditioned upon the use of the Property, appellee points to two provisions.  First, it points to paragraph one of the Agreement which states: "The Land Owner grants to the Contractor *permission* to establish a staging area for basing operations associated with the construction project including storage of materials, equipment and other pertinent items of work." (Emphasis added.)  Appellee contends that use of the word "permission" demonstrates the parties' intent that it was permitted, not required or obligated, to use the Property.  Next, appellee points to the

Lump Sum Payment provision, and argues that the words making payment due "at start" and "upon completion" create express conditions precedent to its payment obligations.

{¶ 17}  Appellee also contends that the subject matter of the Agreement supports a finding of condition precedent, because fulfillment of the agreement "contemplated significant use, disruption and alteration to [appellant's] property had [appellee] used the Property." Appellee contends that interpreting the Agreement to require appellee to pay appellant despite never having used, disturbed, or altered the Property would make the agreement unfair and unreasonable; and would give the Agreement no meaning or purpose.

{¶ 18}  In contrast, appellant argues that the four corners of the Agreement contains no conditional language; but rather, clearly and unambiguously defines the contractual *obligations* of the parties.  Appellant also disputes that the use of the words "1/2 at start $25,000", and "1/2 upon completion and acceptance $25,000" creates an express condition precedent.  Appellant contends that placement of this language under a section of the Agreement labeled "Lump Sum Payment" "speaks solely to the timing of the payment of the contract price."  Appellant also argues that appellee mischaracterizes the use of the word "permission"; and alleges that the word is actually used to describe his obligations, not to modify the obligations of appellee.  In support, appellant points to the surrounding provisions and notes that the two paragraphs immediately following the paragraph in which the word "permission" is used, relate solely to the obligations of the appellant and have no bearing on the obligations of appellee.

{¶ 19}  Applying the rules of interpretation set forth above, we conclude that the trial court erred when it determined that appellee was not obligated to perform under the Agreement until or unless the Property was used.  As an initial matter, we reject appellee's argument that the

Lump Sum Payment provision of the Agreement expressly made the use of the Property a condition precedent to its payment obligation. Rather, we read the provision as an unambiguous obligation of appellee to make payment in exchange for appellant making his Property available for use during the duration of the ODOT Project. Put another way, the Lump Sum Payment provision sets forth an unconditional promise by the appellee to perform – i.e., a promise to make payment of Fifty Thousand Dollars ($50,000.00). The words "at start" and "upon completion," merely set forth the time that appellee was required to make payment. Had the parties intended to make payment conditional upon appellee's actual use of the Property, they easily could have inserted language to that effect. We find that the Lump Sum Payment provision is not explicit enough to indicate that the parties intended to create a condition precedent.

{¶ 20} We also reject appellee's argument that use of the word "permission," in paragraph one of the Agreement, demonstrates the parties' intent to create a conditional contract. As appellant points out in its reply brief, paragraph one is contained in a portion of the Agreement that sets forth the duties and obligations of appellant. Thus, it is clear when reading the provision in the context of the entire contract that use of the word "permission" is not intended to grant appellee discretion in deciding whether to use the Property; but rather to expressly set forth the promise of appellant to make the Property available to appellee.

{¶ 21} Moreover, a review of the entire Agreement further evidences an intent of the parties to create an unconditional contract. For instance, the express terms of the Agreement requiring appellee to place an embankment of 120,000 cubic yards, to strip and replace topsoil, to grade and seed all disturbed areas, to provide positive drainage, and to place aggregate up to building site, are all drafted as assurances and declarations. There is no language modifying

these obligations or evidencing an intent to make the obligations conditional.  In fact, nowhere in the Agreement will one find language that is typical of a conditional contract; i.e., nowhere in the Agreement can be found the words "condition" or "conditional," "contingent," "subject to," "unless," and etc…

{¶ 22}  Finally, we also disagree with appellee's argument that the subject matter of the Agreement evidences an intent of the parties' that the Agreement be conditional.  The Agreement is titled "Construction Site Agreement."  The introductory recital states that the Agreement concerns "a certain construction contract between the [George J. Igel & Co., Inc.] and Ohio Dept. of Transportation in Hocking County, Ohio, designated as ODOT 110417."  The Agreement was clearly executed with the understanding that use of appellant's Property was necessary in order for appellee to fulfill its Project obligations with ODOT.  Accordingly, the subject matter of the agreement evidences an intent that the Agreement was unconditional, and of vital importance to appellee's ability to perform its contract with ODOT.

{¶ 23}  Appellee also advances the argument that the timing of the Agreement execution evidences the parties' intent to create a conditional contract.  More specifically, appellee argues that the parties' could not have intended that appellee was obligated to use the Property because at the time the Agreement was executed, appellee had yet to even bid on the ODOT contract.  In essence, appellee is asking the court to consider parol evidence in support of its contention that its obligations under the Agreement were conditioned upon use of the Property.

{¶ 24}  " 'While parol evidence is inadmissible to vary the unambiguous terms of a written contract, it is admissible to establish a condition precedent to the existence of a contract.' " *Hiatt*, 2005-Ohio-6536 at ¶ 31, quoting *Riggs v. Std. Slag Co.*, 9th Dist. No. 16199, 1993 WL

473817, *1 (Nov. 10, 1993). However, "[e]ven a condition precedent may not be shown by parol evidence when the condition is inconsistent with the express terms of the writing. When the subject matter of a condition precedent is dealt with in the written instrument, in any form, the condition may not be shown by parol evidence to be different from the manner in which it is expressed in the writing." *Id*. at ¶ 32. Here, we have already determined that the Agreement unambiguously imposes on appellee a contractual duty to perform. Because the Agreement speaks specifically to the duties of the parties', any parol evidence offered to prove a contingent relationship would contradict the express terms of the Agreement. Even more, the Agreement contains an integration clause which states that: "It is agreed that the terms and conditions of this agreement are fully covered in the foregoing and that any oral or written statements made by either party or agents, not set forth herein, are not binding on the parties and are not considered as part of this agreement." As such, reliance upon parol evidence is inappropriate in the case at hand.

{¶ 25} In sum, we find that use of the Property was not a condition precedent to appellee's duty to perform under the Agreement. A contract existed; appellant fulfilled his obligations under the contract; and appellee undisputedly failed to perform its obligations under the contract. However, we believe that genuine issues of material fact exist with respect to whether damages resulted from the breach. The trial court did not commit error by denying appellant's motion for summary judgment as damages still need to be proven to succeed on a breach of contract claim. However, the trial court did err in granting appellee's motion for summary judgment. The trial court's judgment is hereby reversed and this cause is remanded so that a hearing may be held regarding damages.

{¶ 26} Based upon the foregoing, we sustain appellant's first assignment of error and overrule appellant's second assignment of error. We reverse the judgment of the Hocking County Court of Common Pleas; and we remand this matter to the trial court so that further proceedings may be held regarding the damages.

JUDGMENT REVERSED AND CAUSE REMANDED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs herein taxed.  The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.:  Concurs in Judgment and Opinion.
McFarland, P.J.:  Dissents.

For the Court

By:_____
                Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.